### COMMONWEALTH *vs.* HENRY GODING.

The game of bowls and nine-pins is an unlawful game, within the meaning of the Rev Sts. *c.* 50, § 17 ; and, therefore, one who is not licensed as an innholder, &c. is liable to indictment, if he, for hire, gain or reward, suffer persons to resort to a building actually used or occupied by him, for the purpose of playing at bowls and nine-pins.

THE indictment against the defendant alleged that he, " on the first day of August 1840, at Lowell, in the county of Middlesex, not being then and there licensed as an innholder, victualler or retailer of spiritous liquor, for hire, gain and reward, unlawfully did permit certain persons, whose names to the jurors are unknown, to resort to a certain building there situate, and by said Goding then and there actually used and occupied, for the purpose of playing at bowls and nine-pins ; the same being then and there an unlawful game ; against the peace of the Commonwealth, and contrary to the form of the statute in such case made and provided."

At the trial before *Warren*, J. in the court of common pleas, the defendant admitted that the allegations in the indictment were true, but insisted that the facts thus alleged did not constitute an offence for which he was liable to indictment. The judge ruled otherwise, and the jury found the defendant guilty The defendant excepted to the ruling.

*J. G. Abbott*, for the defendant.

*Austin*, (Attorney General,) for the Commonwealth.

SHAW, C. J.   In construing the revised statutes, we are to bear in mind that the whole were passed at one and the same time, and constitute one act ; and then the rule applies, that in construing one part of a statute, we are to resort to every other part, to ascertain the true meaning of the legislature in each particular provision.   This rule is peculiarly applicable to the revised statutes, in which, for the convenience of analysis, and classification of subjects, provisions are sometimes widely separated from each other in the code, which have so immediate a connexion with each other, that it is quite necessary to consider the one, in order to arrive at the true exposition of the other.

The indictment in this case charges that the defendant, not being licensed as an innholder, victualler or retailer, did, for hire and reward, unlawfully permit persons to resort to a building used and occupied by him, for the purpose of playing at bowls and nine-pins. These facts being proved or admitted, it is contended for the defendant, that it charges no indictable offence. It is founded on Rev. Sts. c. 50, § 17, which makes it penal for any unlicensed person, for hire or reward, to suffer persons to resort to any house or building used and occupied by him, "for the purpose of playing at billiards, cards or dice, or any other unlawful game." "Bowls" not being included in the specific enumeration, it is contended, that it cannot come under the denomination of "unlawful game." This is the question.

In construing a statute, every clause and word shall be presumed to have been used by the legislature for some purpose ; and some meaning, if possible, shall be assigned to it. We are then to inquire, what was intended by "other unlawful game." The first suggestion is, that the term "other" implies that those enumerated are unlawful, and secondly, that those alone are not intended, but that some others are embraced, and others of the same kind. But there is no statute, that makes the game of billiards, cards or dice unlawful, absolutely *per se*, wherever and however used. It is only when used at licensed houses, or at places opened and kept for the purpose, for hire, gain or reward, as places of common resort, that these games are thus declared to be unlawful. Then by referring to the Rev. Sts. c. 47, § 9, we find it in like manner made penal for a licensed innholder to permit persons to resort to his premises, for the purpose of playing at dice, cards, bowls, billiards, quoits or any unlawful game or sport. Here is a legislative declaration, that "bowls" shall be deemed an unlawful game, when exercised at a licensed house. The obvious intent of the provision, first above cited, is to extend the same prohibition to unlicensed houses, if opened as places of common resort ; and that they shall be deemed places of common resort, if the proprietor and occupant shall so open them for hire, gain or reward.

In framing the revised statutes, both of these provisions were

taken from *St.* 1798, *c.* 20, with slight modifications. Section 1st of that statute made it penal for a licensed innholder to allow persons, within his premises, to play at billiards, cards, dice or any other unlawful game. Section 2d extended the same prohibition to the unlicensed occupant of a house, to allow persons, for hire, gain or reward, to play, within his premises, at billiards, cards, dice, or any other unlawful game ; in this respect, using the same terms in both sections. The express object of the act was to prevent gaming, and suppress gaming-houses ; and for that purpose, licensed and unlicensed houses were put on the same footing. In this act, the games of "bowls" and "quoits" are not in terms enumerated as amongst unlawful games. But in an earlier statute for regulating licensed houses, *St.* 1786, *c.* 68, § 5, containing a like prohibition to taverners and other keepers of licensed houses, the games enumerated are dice, cards, bowls, billiards, quoits, or any other unlawful game or sport. This, therefore, was undoubtedly the provision from which the commissioners, in framing § 9, of *c.* 47 of the revised statutes, took the enumeration of games designated as unlawful, when used at a public licensed house. We then find that Rev. Sts. *c.* 50, § 17, had the same object in view ; viz. to suppress open gaming-houses, of common resort, whether licensed or unlicensed houses, and that they were in fact revised from one and the same statute In the former, "bowls" and quoits are enumerated as unlawful games, when used and exercised at a public house ; in the latter, having the same object in view, extending the same prohibition to unlicensed houses, if opened as gaming-houses, three out of five of the same games are specifically enumerated as the prohibited games, with other unlawful games. Whatever else the legislature intended to include under the designation of unlawful games, we think that they did intend to include "bowls" and "quoits," which are included in the same act, and specifically designated as unlawful games, when used and exercised under the same circumstances, at a house opened and kept for hire as a place of public resort. We are, therefore, of opinion that the indictment does state an indictable offence, and that the decision to that effect by the court of common pleas was right.

*Exceptions overruled*